IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| ROBERT MICHAEL LESKO, | ) |
| | ) Civil Action No.: |
| | ) 2:24-CV-01660-CBB |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Christopher B. Brown |
| COMMISSIONER, SOCIAL | ) United States Magistrate Judge |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION[1]**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**
**ECF Nos. 4 and 6**

**Christopher B. Brown, United States Magistrate Judge**

I.     Introduction

Plaintiff Michael Robert Lesko ("Lesko") filed his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, on March 16, 2023. ECF No. 2-2 at 25.  Lesko claimed he became disabled beginning December 25, 2022 due to stage 1 blood cancer, chronic pain, gout, fatigue/immune system deficiencies. ECF No. 2-3 at 3.

After Lesko's claims were initially denied, he sought reconsideration and a hearing before an Administrative Law Judge ("ALJ") on July 18, 2024. ECF No. 5 at

---

[1]      All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

1

1. On August 16, 2024, the ALJ denied Lesko's requests for benefits and found that Lesko was not disabled under the Act. *Id.* The Appeals Council declined to review the ALJ's decision and Lesko filed a timely appeal with this Court. ECF No. 7 at 3.

Presently pending before the Court are cross motions for summary judgment by the parties. ECF Nos. 4 and 6. The motions are fully briefed and ripe for consideration. ECF Nos. 5, 7, 9. For the reasons that follow, Lesko's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, the Commissioner's decision to deny benefits is vacated and the matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further review consistent with this decision.[2]

## II. Factual Background

The following summary is limited to information relevant to the current appeal. Lesko was born on October 1, 1960 and was 62 years old at the onset of his alleged disability on December 25, 2022. ECF No. 2-2 at 26; ECF No. 2-3 at 2. He previously worked as a business manager, but testified he stopped working on December 25, 2022 after he became ill and was diagnosed with myleofibrosis, a rare type of incurable blood cancer in January 2023. ECF No. 2-10 at 26. For palliative care, Lesko was prescribed Pacritinib (Vonjo), a medication used for treating individuals with intermediate or high-risk myelofibrosis and azacytidine, a chemotherapy medication to reduce the growth of cancer cells. *Id.* at 14; ECF No. 2-

---

[2]    Frank Bisignano is substituted as the Defendant in this matter, pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect this change.

12 at 16, 20-21; ECF No. 5 at 9 n. 10; n. 11.  Side effects of Pacritinib include, *inter alia*, shortness of breath, numbness in a leg or arm and extreme fatigue. ECF No. 2-12 at 2-5..  Side effects of azacitidine include, *inter alia*, unusual weakness or tiredness. *Id.* at 21..

Lesko was treated by Dr. Salman Fazal, an oncologist, and his primary care physician Dr. Brian Lamb. ECF No. 5 at 8-9.  Throughout his treatment, Lesko reported symptoms of, *inter alia*, brain fog, fatigue, and neuropathy in his feet to his treating physicians. *See* ECF No. 5 at 9.  In treatment notes for an April 2024 appointment, Dr. Fazal noted Lesko's fatigue symptoms and characterized Lesko's inability to perform activities as remaining "quite significant." ECF No. 2-25 at 12.

Among other medical testimony, there are several key medical opinions and evaluations in the present record:

### Dr. Fazal: Treating Oncologist

Dr. Fazal, Lesko's treating oncologist, authored two medical opinions, one in June 2023 and one in February 2024. ECF No. 2-17 at 32-33; 89-90.  In his June 2023 opinion, Dr. Fazal opined Lesko could lift up to 5 lbs occasionally during the workday; could use his hands for simple grasping repetitively, but not for pushing, pulling or find manipulation; and he could not use his feet for repetitive movements. *Id.* at 32; 89.  Dr. Fazal expected Lesko's disability to last twelve continuous months and opined based on his clinical assessment of Lesko that he could not be employed. *Id.* at 33.  In his February 2024 opinion, Dr. Fazal again opined that Lesko could stand/walk less than one hour and lift up to 5 lbs occasionally during the workday;

3

could use his hands for repetitive simple grasping; and could not push or pull. ECF No. 2-24 at 65-66. Based on his clinical assessment, Dr. Fazal again opined that Lesko could not be employed. *Id.* at 66.

### Dr. Lamb: Treating Primary Care Physician

Dr. Lamb, Lesko's primary care physician, issued an opinion in the form of a physical capacity evaluation in February 2024 in which he opined in an eight-hour workday, Lesko could stand or walk less than one-hour and lift up to 5 lbs occasionally; could use hands repetitively for simple grasping and no pushing, pulling or fine manipulation; and could not use his feet for repetitive movements. *Id.* at 68-69. Dr. Lamb stated Lesko was "still not able to work. He has MDS which is preventing him from meaningful employment." *Id.* at 69.

### Independent Functional Capacity Evaluation

Lesko underwent a functional capacity evaluation ("FCE") by David W. Truschel, MS, OTR/L, CEAS, CMT. ECF No. 2-17 at 99-105. Truschel's August 8, 2023 report noted a validity profile score of 100%, which means Lesko demonstrated consistent effort throughout the evaluation. *Id.* at 99; 104-105. Truschel noted Lesko could work part-time (five 4-hour days) at the sedentary level. *Id.* at 99-100; 105. Truschel noted "right hand prehensile strength was diminished. Weakness was noted in the bilateral gluteus maximus and medius. Hamstring length was diminished bilaterally. Crepitus was noted in the right knee and diminished sensation in the bilateral fingertips bilaterally. Right shoulder external/internal rotation was moderately limited." *Id.* at 105. Truschel also noted that fatigue was

caused by several activities including hand carry, repetitive postural maneuvers, overhead reaching, forward reaching, kneeling, stair climbing, and standing/walking. *Id.* at 102-03.

### Kathleen Lederman, PsyD.

In December 2023, Lesko underwent a mental status evaluation in September 2023 with Kathleen Ledermann, PsyD. *Id.* at 106. Among other diagnoses and assessments, Dr. Lederman diagnosed Lesko with fatigue, exhaustion, and brain fog and assessed "mild limitations" to Lesko's ability to "understand and remember complex instructions," "carry out complex instructions," and "make judgments on complex work-related decisions." *Id.* at 109; 111.

### State Agency Consultations

In April 2023, John Bertolino, M.D., a state agency medical consultant, reviewed Lesko's medical records and opined that Lesko could, in part, lift up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours in a workday, and sit for about 6 hours in a workday. ECF No. 2-3 at 6.

In October 2023, state psychiatric consultant Karen Plowman, PsyD reviewed Lesko's medical records and cited a non-severe depressive, bipolar and related disorder and anxiety and obsessive-compulsive disorder and assessed "mild" limitations to Lesko's ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage oneself. *Id.* at 14.

In December 2023, Michael Lombard, M.D., another state agency medical consultant, reviewed Lesko's medical records at the reconsideration level and agreed with Dr. Bertolino's assessment that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently and sit for about 6 hours in a workday but was limited to only 4 hours of standing or walking. *Id.* at 16.  Dr. Lombard indicated these exertional limits considered Lesko's myeloid malignancies and "effects of therapy on function." *Id.* at 6.

### III.   The ALJ Decision

The following summary is limited to information relevant to the current appeal.

At step one of the sequential analysis – whether the claimant is engaging in substantial gainful activity – the ALJ found Lesko met the insured status requirements of the Social Security Act through June 30, 2027 and had not engaged in substantial gainful activity since the alleged onset of his symptoms on December 25, 2022. ECF No. 2-2 at 28.

At step two of the sequential analysis – whether the claimant has medically determinable impairments that are severe – the ALJ found Lesko had two severe impairments: myelofibrosis and obesity. *Id.* at 29-30 (citing 20 C.F.R. § 404.1520(c)). The ALJ found that while documented in medical evidence, Lesko's hypertension, obstructive sleep apnea, gout, diarrhea, depressive disorder, adjustment disorder and anxiety disorder were "non-severe" impairments and did not more than minimally limit his ability to perform basic work activities. *Id.* at 30. (citing SSR 85-

28). As for Lesko's mental impairments related to fatigue, "brain fog" and concentration symptoms, the ALJ found testimony and records supporting a finding that these symptoms were "no more than mild mental limitations[]" in Lesko's ability to do basic work activities and found these impairments were nonsevere. *Id.* at 30-33 (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ stated the mild mental limitations were "not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.* at 32.

At step three of the sequential analysis – whether the claimant's impairments are so severe to meet or medically equal the criteria set forth in the regulations – the ALJ found "the medical evidence does not document listing-level severity" for Lesko's myelofibrosis and obesity, and "no acceptable medical source as mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." *Id.* at 33.

Prior to commencing step four, the ALJ determined Lesko's residual functional capacity ("RFC"). The ALJ found Dr. Fazal and Dr. Lamb's opinions not persuasive, found Truschel's opinion only partially persuasive, and found Drs. Bertolino and Lombard's opinions generally persuasive and adopted Dr. Lombard's opinion on Lesko's RFC in full. *Id.* at 33-39. The ALJ did not explicitly discuss Dr.

7

Lederman or Dr. Plowman's opinions on his mild mental limitations in formulating the RFC. The ALJ found Lesko was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours and standing and/or walking for a total of four hours over the course of an eight-hour workday; push and pull and much as he can lift and carry; frequently climb ramps and stairs; frequently maintain balance over narrow, slippery, or erratically moving surfaces; frequently stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes or scaffolds; occasionally work at unprotected heights or in close proximity to dangerous moving mechanical parts; and never work in conditions in which he is exposed to the weather. *Id.* at 34.

At step four – whether the claimant's impairments prevent him from performing his past relevant work – the ALJ found Lesko had the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b). *Id.* Relying on the RFC, the ALJ found Lesko could perform his past relevant work because the work did not require the performance of work-related activities precluded by Lesko's RFC. *Id.* at 40 (citing 20 C.F.R. § 404.1565). Considering the Vocational Expert's ("VE") testimony, the ALJ found Lesko could perform his past work as a business manager, which the VE explained is a light exertional, skilled job. *Id.* (citing Dictionary of Titles ("DOT") 187.167-082). The ALJ then found Lesko was not disabled. *Id.* at 40-41.

## IV.    Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g). If the Court finds substantial evidence supports the final decision, it must uphold it. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S. 97 (2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705–06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Remand is appropriate if the record is incomplete or if the ALJ's findings are incomplete and failed to "explicitly weigh all relevant, probative and available evidence" of record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (cleaned up).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that they cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

(3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1;

(4) whether the claimant's impairments prevent them from performing their past relevant work; and

> (5) if the claimant is incapable of performing their past relevant work, whether they can perform any other work which exists in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment under steps 1 through 4. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  If the claimant meets his burden and shows he is unable to resume previous employment, the burden shifts to the Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he can perform alternative substantial gainful activity. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## V.     Discussion

Lesko argues the ALJ erred in assessing his residual functional capacity because he failed to account for the "total limiting effects" of his impairments – specifically, his chronic fatigue, "brain fog" and neuropathy. ECF No. 5 at 3.  Within that overarching argument, Lesko makes the specific arguments that the ALJ erred in formulating the RFC when (1) he failed to consider the medical opinions from his treating oncologist and PCP with respect to his aforementioned impairments; (2) used highly selective references to the record to support his decision and ignored other objective medical records supporting Lesko's impairments; (3) engaged in lay interpretation of medical evidence; (4) failed to provide the VE with any hypothetical incorporating the limitations ascribed by Lesko's treating physicians;

11

and (5) failed to consider Lesko's self-described chronic fatigue, brain fog and neuropathy symptoms. ECF No. 5 at 13-18.

The Commissioner responds that the ALJ's decision is supported by substantial evidence. ECF No. 7 at 8-13.

In his reply brief, Lesko reemphasizes his argument that the RFC was not supported by substantial evidence because while the ALJ found Lesko had mild mental limitations, the ALJ provided "no analysis of how [these symptoms] impact[ed] his RFC – except for the conclusory statement . . . that 'the persistence and intensity of symptoms [] including fatigue, are reflected in the limitations found in this RFC.'" ECF No. 9 at 3 (quoting ECF No. 2-3 at 19).  Because Lesko is correct that the RFC was not supported by substantial evidence related to his mild mental limitations, only that argument is addressed.

### a. The RFC was not Supported by Substantial Evidence Related to Lesko's Mental Limitations

Lesko argues the RFC was not supported by substantial evidence because the ALJ adopted the state agency administrative findings which acknowledged Lesko's brain fog and fatigue as consistently demonstrated symptoms but provided no analysis about how these mild mental limitations impacted the RFC, and relatedly that the ALJ failed to include these limitations in the hypothetical question to the vocational experts whom the ALJ relied in determining that he could return to his past prior work. ECF No. 5 at 4; 15-16; ECF No. 9 at 3.  The Commissioner does not explicitly respond to this argument but responds the ALJ considered Lesko's

symptoms and resulting limitations when he considered the medical record as a whole and found Lesko's subjective complaints were not consistent with his treatment record, reasonably determined he was less limited than he alleged and was not precluded from performing a range of light work. ECF No. 7 at 13.

At step 2, when the claimant alleges mental impairments, the ALJ must determine whether the mental impairment is "severe." 20 C.F.R. §§ 404.1520a, 416.920a. If the ALJ determines the medical record supports a medically determinable mental impairment, but finds those mental impairments are not "severe" and instead rates the degree of the claimant's limitations as "mild," 20 C.F.R. §§ 404.1520a; 416.920a; 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1), an ALJ is still required to consider all impairments – both severe and non-severe – when formulating the RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In determining the RFC, the ALJ must determine "the most [a claimant] can still do despite [his] limitations based on all the relevant evidence in [the] case record." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (cleaned up). The RFC determination "requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories" and "must be expressed in terms of work-related functions" like "describing the claimant's abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* (cleaned up). While no special "incantations

13

are required at step four and five simply because a particular finding has been made at steps two and three[,]" the ALJ's statement of limitation must

> reflect the claimant's particular impairments, including those embodied in the functional limitation findings. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " [SSR 96-8P] at *5; *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c) (explaining that a mental RFC assessment must begin with an examination of "the nature and extent of [the claimant's] mental limitations and restrictions"). And, again, although steps two and three differ from steps four and five, the functional limitation findings are plainly relevant to an ALJ's statement of the claimant's limitation at the later steps because they involve the claimant's actual impairments. Cf. SSR 96-8P, at *4 ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories[.]").

*Hess*, 931 F.3d at 209. The ALJ is not required to recite the functional limitation findings verbatim in the statement of limitation but must "adequately convey[]" those findings because they are "relevant to that statement of limitation, which must be sufficient to reflect all of a claimant's impairments." *Hess*, 931 F.3d at 210.

Here, at step 2, the ALJ found that Lesko had medically determinable mental impairments related to, *inter alia*, fatigue, memory and concentration, and brain fog, that caused no more than "mild" limitation in any of the functional areas. ECF No. 2-2 at 30-32. The ALJ stated "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." *Id.* at 32. In formulating the RFC, the ALJ recounted the record

evidence including treatment notes indicating that Lesko had fatigue, memory/concentration and brain fog symptoms but provided no analysis how these mild limitations impacted the RFC. The ALJ concluded the limitations in the RFC related to reduced standing and walking and postural limitations "accounted for" Lesko's "variable symptoms (fatigue, shortness of breath, etc.)[.]" Tr. at 38. But, there was no further discussion or analysis of Lesko's mental limitations except to note that state agency medical consultant's proposed limitations that were adopted by the ALJ "accounted for" these limitations. *Id.* at 39. These boilerplate statements and incorporation by reference of Lesko's mental limitations into the RFC are not "valid explanations" or "detailed assessments" of how Lesko's mental limitations were considered in deciding his RFC as required by the applicable regulations and jurisprudence. *See Hess*, 931 F.3d at 213–14; *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004); SSR96-8P.

Courts in this circuit have "consistently held that even mild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon." *Meersand v. Kijakazi*, No. CV 20-1084, 2021 WL 5003331, at *3 (E.D. Pa. Oct. 28, 2021) (citing *Benedetto v. Saul*, No. CV 19-4021, 2020 WL 5763551, at *6–7 (E.D. Pa. Sept. 28, 2020); *Hefferan v. Berryhill*, No. 17-2720 (E.D. Pa. Apr. 5, 2018); *Kennedy v. Berryhill*, Civil No. 16-5478 (E.D. Pa. Jan. 23, 2018); *Metelli v. Berryhill*, No. CV 16-6094, 2017 WL 2570913, at *1 (E.D. Pa. May 26, 2017), *report and recommendation adopted,* No. CV 16-6094, 2017 WL 2547288 (E.D. Pa. June 13, 2017); *Savage v.*

*Berryhill*, No. 17-2548 (E.D. Pa. Jan. 17, 2018); *Green v. Colvin*, 179 F. Supp. 3d 481, 486 (E.D. Pa. 2016); *Curran v. Astrue*, No. CIV.A. 11-5894, 2012 WL 5494616, at *5 (E.D. Pa. Nov. 13, 2012); *Harmon v. Astrue*, No. CIV.A. 10-6781, 2012 WL 94617, at *2 (E.D. Pa. Jan. 11, 2012); *Washington v. Astrue*, No. CIV.A. 08-2938, 2009 WL 855893, at *1–2 (E.D. Pa. Mar. 31, 2009)). *See also*: *Gunn v. Kijakazi*, 705 F. Supp. 3d 315, 332 (E.D. Pa. 2023) (remand appropriate when ALJ did not explain why claimant's mild mental impairments were not considered in determining claimant's RFC); *Kich v. Colvin*, 218 F. Supp. 3d 342, 357 (M.D. Pa. 2016) (remand appropriate where ALJ did not explain why mental health related limitations were omitted in the RFC); *Siry v. Bisignano*, No. CV 24-1910, 2025 WL 2447786, at *5 (E.D. Pa. Aug. 25, 2025) (remand appropriate when ALJ did not explain why claimant's mild mental impairments were not considered in determining claimant's RFC and ALJ used boilerplate language at step 4 to analyze the impact of claimant's minimal mental limitation); *Maria A. v. Comm'r of Soc. Sec. Admin.*, No. CV 23-2484 (MAS), 2024 WL 943466, at *6 (D.N.J. Mar. 5, 2024) (remand appropriate when ALJ included only a "passing reference" to mild mental limitations which was insufficient to determine a claimant's RFC); *Balla v. Comm'r of Soc. Sec.*, No. CV 18-00386 (RBK), 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) (remand appropriate because "the ALJ's reference to [the] [p]laintiff's mild mental limitations fails to clearly explain the 'impact of [the] [p]laintiff's mental impairments on her ability to' complete the relevant work"); *Curry v. Comm'r of*

*Soc. Sec.*, No. 1:15-CV-07515-NLH, 2017 WL 825196, at *5–6 (D.N.J. Mar. 2, 2017) (same).

Simply put, while a finding that a claimant has a mild mental limitation does not automatically result in "a corresponding mental limitation in the RFC[,]" an ALJ must consider these findings in formulating the RFC. *Gunn*, 705 F. Supp. 3d at 333. In *Gunn*, the court was asked to assess similar language to that used by the ALJ here to assess a claimant's mild mental limitations. *Id.* After considering the universe of authority, the court found

> a boilerplate statement at step two that the ensuing RFC assessment "reflects" the limitations determined at step two, with no further discussion of those limitations (except to the extent they match the limitations noted in the required discussion of the State agency psychological consultants' administrative findings) is not the "valid explanation" required by Third Circuit case law or the "detailed assessment" required by SSR 96-8p. *See Hess*, 931 F.3d at 213-14; *Ramirez*, 372 F.3d at 555; SSR 96-8p, 1996 WL 374184, at *5. It is inconsistent with regulations requiring the ALJ when formulating the RFC to "consider" all impairments, even non-severe ones, and at odds with the only circuit-level decision addressing the viability of such a statement. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Wells* [*v. Colvin*], 727 F.3d [1061] at 1068-71.

*Id. See also Siry*, 2025 WL 2447786, at *5 (rejecting similar "boilerplate language" that "neglected to articulate how [claimant's] minimal mental limitation impacted her RFC.").

"[I]t is insufficient for the ALJ to state that he considered all symptoms and make passing reference to the medical evidence regarding mental health if the ALJ did not specifically consider or address the impact of a plaintiff's mental impairments on her ability to work[.]" *Maria A.*, 2024 WL 943466, at *6 (cleaned

17

up). Having a mild mental limitation does not automatically signify that a claimant can perform his "past relevant work at the calculated RFC." *Balla*, 2019 WL 2482661, at *3.

The ALJ here did not account for any impact of Lesko's mental limitations in formulating his RFC and used boilerplate language at step 4 that has been rejected by other courts explained *supra*. The ALJ found Lesko had mild mental limitations at step 2 and did not explain the impact those limitations had, if any, on Lesko's RFC. The ALJ's assessment simply stated: "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." ECF No. 2-2 at 32. At step 4, the ALJ adopted the state medical consultant's opinion because it included physical limitations for standing and sitting that "better accounted for the claimant's variable symptoms (fatigue, shortness of breath, etc.)" but neglected to articulate the impact of his mental limitations on the RFC. Accordingly, the case will be remanded for the ALJ to consider Lesko's mild mental limitations in formulating the RFC.

### b. Lesko's Additional Arguments

Because the court cannot independently weigh the evidence or substitute its conclusions for those of the ALJ, the Court cannot determine whether the ALJ's decision was otherwise supported by substantial evidence. *Curry*, 2017 WL 825196, at *6 ("The Court cannot weigh the evidence or substitute its conclusions for those of the ALJ, or independently determine the impact of Plaintiff's mental

impairments in combination with her physical impairments on her RFC. Without the ALJ performing that analysis, the Court also cannot determine whether the ALJ's decision is supported by substantial evidence.").  Because it is possible on remand that the ALJ may reach different conclusions after considering Lesko's mental limitations in formulating the RFC, which may render any further arguments levied by Lesko moot, the Court declines to address Lesko's additional arguments, without prejudice for him to reassert if appropriate. *See William R. v. Bisignano*, No. 24-CV-4765, 2025 WL 1738663, at *9 (E.D. Pa. June 23, 2025); *Steininger v. Barnhart*, No. CIV.A. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005).

## VI.     Conclusion

Accordingly, for the foregoing reasons, summary judgment is granted in favor of Lesko, the Commissioner's motion for summary judgment is denied, the Commissioner's decision to deny benefits is vacated and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of Lesko's mental impairments in the formulation of the RFC.  An appropriate Order follows.

DATED this 18th day of December, 2025.

> BY THE COURT:
>
> s/Christopher B. Brown
> United States Magistrate Judge